UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**OEC FREIGHT (NY), INC.,** *d/b/a OEC GROUP*,

                Plaintiff,

-against-

**STORLIE FURNITURE DISTRIBUTORS, LLC,** *doing business as STORLIE FURNITURE GROUP*, **and DON SMITH & ASSOCIATES, INC.,** *doing business as EXPRESS OFFICE FURNITURE*,

                Defendants.

1:23-cv-06299 (ALC)

**OPINION & ORDER**

---

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff OEC Freight (NY), Inc. alleges breach of contract, or in the alternative, unjust enrichment. Defendant Storlie Furniture Distributors LLC moves to dismiss the claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion is **DENIED**.

## BACKGROUND

### I.  Factual History

Plaintiff OEC Freight (NY), Inc., doing business as OEC Group, ("OEC") is a corporation under the laws of New York. *See* ECF No. 1 ¶ 9. Defendant Don Smith & Associates, Inc., doing business as Express Office Furniture, ("DSA") was a corporation organized under the laws of Kansas. *See id.* ¶ 10. Defendant Storlie Furniture Distributors LLC, doing business as Storlie Furniture Group, ("Storlie") is a limited liability company organized under the laws of Minnesota and whose members are citizens of Nevada and Canada. *See id.* ¶ 11.

On or around March 6, 2013, OEC entered into a Credit Agreement with DSA to broker the transportation of furniture from China to Kansas City, Missouri. *See* ECF No. 44 ¶ 8 (Second

Amended Complaint, hereinafter "SAC"); *see also* ECF No. 44-1 ("Credit Agreement"). Storlie allegedly acquired DSA on or before September 27, 2022. *See id.* ¶ 11. The details regarding this acquisition are not publicly available but are in the possession of both DSA and Storlie. *See* SAC ¶¶ 12–13. OEC alleges that Storlie acquired substantially, if not all, of DSA's assets, including the furniture for which OEC had brokered transportation, leaving DSA without adequate assets to pay its creditors. *See id.* ¶¶ 14–15.

On or around September 27, 2022, DSA's employees, officers, and/or directors, including Jennifer Wolf-Logsdon and its President, Tom O'Brien, became Storlie employees, officers, and/or directors. *See id.* ¶¶ 16–17. Around that same time Storlie took over operation of DSA's pre-existing website, catalog, and facilities, began conducting business under DSA's pre-existing business name—Express Office Furniture—and sold DSA's pre-existing furniture, including the items for which OEC brokered transportation. *See id.* ¶¶ 20–21, 23.

In or around October of 2022, Tom O'Brien informed OEC that arrangements had been made to ensure OEC would be paid DSA's remaining balance. *See id.* ¶ 18. Allegedly DSA would pay $55,000.00 per month through March 2023 and any remaining balance in total six months thereafter. *See id.* ¶ 19.

On or about December 12, 2022, Tom O'Brien used a Storlie email address to contact an OEC employee and share an excerpt of an ACH transfer in the amount of $55,000.00 from a DSA account to OEC. *See id.* ¶ 25; ECF No. 44-2 (2022 email correspondence attached to SAC). Keith Storlie, Storlie owner, was also copied on the email. *See* SAC ¶ 25; ECF No. 44-2. O'Brien made a second payment for the same amount on or about January 18, 2023. *See* SAC ¶ 26.

On February 28, 2023, OEC sent an inquiry to O'Brien regarding the status of the February payment, and sent a follow-up on March 1, 2023. *Id.* ¶¶ 27–28; *see also* 44-4 (2023 email correspondence attached to SAC). O'Brien responded on March 2, 2023, explaining that he had "nothing to add now." SAC ¶ 29 (*citing* ECF No. 44-4 at 5). OEC responded the same day, inquiring further into the status of the payment and asking to meet regarding the matter. *See id.* ¶ 31. OEC emailed again on March 9, 2023, *see id.* ¶ 31, to which O'Brien responded saying

> Unfortunately, I don't have much of an update. We are still waiting on the new ownership to reimburse us for some things. To make matters worse, the principal owner is out of country and hard to get a hold of. I am not even sure where he is at. I can't be too pushy. He is my boss.

*Id.* ¶ 32 (*citing* ECF No. 44-4 at 3). On March 13, 2023, O'Brien informed OEC that it should direct all communications regarding the outstanding balance to his counsel. *See* SAC ¶ 33.

As of March 28, 2023, DSA owed $930,738.13 to OEC. *See id.* ¶ 36. On September 23, 2023, DSA filed for dissolution. *See id.* ¶ 37.

## II.   Procedural History

On June 12, 2023, Plaintiff OEC filed an action against Defendants in the Supreme Court of the State of New York, County of New York. *See* ECF No. 1 ¶ 1. On July 20, 2023, Defendant Storlie removed this case from New York state court to the United States District Court for the Southern District of New York. *See generally id.*

On September 21, 2023, OEC filed its First Amended Complaint, which also named DSA and Storlie as defendants. ECF No. 16. On October 27, 2023, Storlie filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* ECF. Nos. 21. After that motion was fully briefed, OEC filed a letter motion requesting to amend its complaint in order to include the newly discovered dissolution of Defendant DSA. *See* ECF No. 33.

On October 21, 2024, this Court held a pre-motion conference and granted OEC leave to file a Second Amended Complaint. *See* ECF No. 40. On October 25, 2024, OEC filed its Second Amended Complaint. *See* ECF No. 44. Counts one and three assert claims for breach of contract against DSA and Storlie respectively. *See id.* at 6, 8. Counts two and four assert claims for unjust enrichment against the same defendants respectively. *See id.* at 7, 10. On November 21, 2024, Storlie filed its motion to dismiss the claims against it, accompanied by its memorandum of law. *See* ECF Nos. 50–51. On December 20, 2024, OEC filed its opposition. *See* ECF No. 54. On January 10, 2025, Storlie filed its reply brief. *See* ECF No. 55.

To date Defendant DSA has failed to appear. *See generally* ECF. OEC obtained a Clerk's Certificate of Default against it on February 18, 2025. *See* ECF No. 60. On March 25, 2025, OEC filed its motion for default judgment against DSA. *See* ECF No. 64. In a separate opinion the Court granted default judgment on OEC's breach of contract claim against DSA. ECF No. 74.

## STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, courts accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also id.* at 681. Instead, the complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555). In addition to the factual allegations in the complaint, the court may consider "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and internal quotation marks omitted).

## DISCUSSION

In effort to dismiss the two counts against it, Storlie first argues that the Second Amended Complaint is generally deficient because OEC failed to provide a basis for its factual allegations made on information and belief, rendering them conclusory. *See* ECF No. 51 at 6. Alternatively, even if such pleading is permissible, Storlie argues that OEC failed to state the elements of both successor liability and unjust enrichment. *See id.* at 7, 18. The Court begins with Plaintiff OEC's pleading obligations when providing factual allegations "upon information and belief."

I.     **Allegations Made Upon Information and Belief**

"The *Twombly* plausibility standard, which applies to all civil actions does not prevent a plaintiff from pleading facts alleged upon information and belief." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal citation and quotation marks omitted). But "[a] litigant

cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018). "Those magic words will only make otherwise unsupported claims plausible when [1] 'the facts are peculiarly within the possession and control of the defendant or [2] where the belief is based on factual information that makes the inference of culpability plausible.'" *Id.* (quoting *Arista Records*, 604 F.3d at 120); *see also Barrett v. Forest Lab'ys, Inc.*, 39 F. Supp. 3d 407, 433 (S.D.N.Y. 2014) (finding that a statement a facts as to the basis of an allegation is only required under the heightened pleading standard of Rule 9(b)).

OEC alleges that Defendants entered into a contract under which Storlie assumed DSA's debts, including its debts to Plaintiff. *See* SAC ¶¶ 6, 14, 15, 35. Given Storlie's role in the alleged acquisition and the nonpublic nature of that acquisition's details, whether Storlie expressly or impliedly assumed DSA's debt to Plaintiff is a fact "peculiarly within the possession and control of" Storlie and DSA. *Schneiderman*, 882 F.3d at 384 (quoting *Arista Recs.*, 604 F.3d at 120) (internal quotation marks omitted); *see also Asset Co IM Rest, LLC v. Katzoff*, No. 23 CIV. 9691 (JPC), 2025 WL 919489, at *11 (S.D.N.Y. Mar. 26, 2025) (applying the principle where multiple defendants are in possession of the nonpublic information). Additionally, the Second Amended Complaint contains other factual allegations which support an inference of culpability, including that Storlie assumed control of DSA's business name, website, and furniture, and that a Storlie employee coordinated payment on DSA's debt to Plaintiff following the alleged acquisition. *See* SAC ¶¶ 22–26.

Accordingly, the Court will not dismiss the Second Amended Complaint for allegations based upon information and belief. OEC has adequately pleaded that Storlie acquired DSA and

6

that Storlie's employee coordinated payment of DSA's debts. The Court now turns to whether, accepting as true all factual allegations in the Second Amended Complaint and drawing all reasonable inferences in Plaintiff's favor, OEC has sufficiently alleged that Storlie is liable as a successor to DSA. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008).

## II.     Successor Liability Claim

"Under both New York law and traditional common law, a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities." *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006). "[A] buyer of a corporation's assets will be liable as its successor if: '(1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations.'" *Id.* (quoting *Schumacher v. Richards Shear Co.*, 451 N.E.2d 195, 198 (N.Y. 1983)). "To state a claim based on successor liability, a plaintiff must plead enough facts for the Court to infer that one of the exceptions to 'the general rule finding that a business entity acquiring the assets from another business generally results in no successor liability.'" *New York v. Town of Clarkstown*, 95 F. Supp. 3d 660, 682 (S.D.N.Y. 2015) (quoting *City of Syracuse v. Loomis Armored US, LLC*, 900 F. Supp. 2d 274, 288 (N.D.N.Y. 2012)).

The only exception to the general rule at issue here is whether Storlie expressly or impliedly assumed DSA's liability. *See* ECF No. 54 at 8–12. Both parties briefed this issue under New York law. *See id.*; ECF No. 51 at 9–12; ECF No. 55 at 5–9. As New York law was selected in the contract between OEC and DSA, *see* ECF No. 44-1 at 3, it applies to the successor liability analysis at this procedural posture. *See Snowbridge Advisors LLC v. ESO Cap. Partners UK LLP*, 589 F.

7

Supp. 3d 401, 417 (S.D.N.Y. 2022) (finding a choice-of-law provision in a contract binds a defendant disputing successor liability over breach of that contract on a motion to dismiss).

Where such pleading is otherwise permissible, express or implied successor liability may be pleaded "upon information and belief." *See Laurent v. G & G Bus Serv., Inc.*, No. 10CIV4055JGKLMS, 2012 WL 13388048, at *14 (S.D.N.Y. Feb. 21, 2012) (finding sufficient information and belief allegation that the defendant acquired the assets and assumed the liabilities of another company); *BASF Corp. v. Albany Molecular Rsch., Inc.*, No. 119CV0134LEKDJS, 2020 WL 705367, at *10 (N.D.N.Y. Feb. 12, 2020) ("Plaintiff's allegations made upon information and belief that [defendants] are subject to indemnity agreements that render them successors-in-interest are sufficient to allow Plaintiff's claims to proceed."); *Rsch. Found. for State Univ. of New York v. Inpria Corp.*, No. 1:24-CV-120 (BKS/ML), 2025 WL 472680, at *27 (N.D.N.Y. Feb. 12, 2025) (noting that where defendant allegedly assumed liability as part of a non-public agreement, express successor liability can be pleaded on information and belief).

The Court is inclined to similarly find Plaintiff's allegations made "upon information and belief" satisfy its initial pleading burden. *See supra* Section I. While, as Storlie points out, Plaintiff does not specifically allege that the contract executed between DSA and Storlie included a provision on liabilities, the Second Amended Complaint does state that Storlie acquired DSA and that it assumed DSA's debts. *See* SAC ¶¶ 11, 35. Additionally, the fact that a contract between Storlie and DSA was executed is not in dispute. *See* ECF No. 55 at 5–6 (referencing the executed acquisition agreement). Whether or not such an agreement to assume liability would be found in that contract is not proper for this Court to consider on the instant motion. *See* ECF No. 55 at 5 n.18 ("[T]he PSA expressly excludes and disclaims any assumption of the OEC debt."). Sufficient

8

to meet Plaintiff's present burden is that OEC alleges the terms of the acquisition are not public but, upon information and belief, do render Storlie liable for DSA's debts. *See BASF Corp.*, 2020 WL 705367, at *10. Accordingly, Storlie's motion is denied as to successor liability.

### III.     Unjust Enrichment Claim

Storlie argues that Plaintiff's unjust enrichment claim is separately deficient. "Under New York law, unjust enrichment is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."[1] *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2019). "To establish unjust enrichment, the plaintiff must show '(1) the other party was enriched, (2) at the other party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered.'" *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 473 (S.D.N.Y. 2020) (quoting *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 567 (S.D.N.Y. 2016)). "However, 'unjust enrichment is not a catchall cause of action to be used when others fail.'" *Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 248 (S.D.N.Y. 2021) (quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (2012)). "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Shane Campbell Gallery, Inc. v. Frieze Events, Inc.*, 441 F. Supp. 3d 1, 6 (S.D.N.Y. 2020) (internal quotation omitted).

---

[1] Plaintiff only briefed this issue under New York law. *See* ECF No. 54 at 12–14. Storlie notes that Kansas, Missouri, or Delaware law may also rightly apply and states it "does not agree" New York law is the proper choice. ECF No. 55 at 9; *see also* ECF No. 51 at 18 n.40 (raising the other choices of law). With that said, Storlie never argued which state's law should be applied and conceded that there is no conflict between the law of those which might otherwise apply to the unjust enrichment claim. *See* ECF No. 51 at 18 n.40. Accordingly the Court applies New York law.

While Storlie seems to initially argue that Plaintiff failed to plead its unjust enrichment claim, *see* ECF No. 51 at 19–20, in its reply brief, Storlie focuses instead on whether the claim is duplicative. *See* ECF No. 55 at 9–10. Storlie also argues that Plaintiff has failed to allege any intent of Storlie's to take on DSA's debts, but cites no authority for why Plaintiff would be required to do so in the context of an unjust enrichment claim. *See id.*

The Court finds that Plaintiff has adequately pleaded an unjust enrichment claim: Storlie acquired DSA's assets, SAC ¶ 74, leaving DSA unable to satisfy its debt to Plaintiff, *id.*, and Plaintiff without the benefit of its bargain with DSA. *See Hesse*, 463 F. Supp. 3d at 473; *see also Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249 (S.D.N.Y. 2006) ("[C]ourts may infer the existence of an implied contract to permit one person who has obtained a benefit from another from unjustly enriching himself at the party's expense.").

Storlie then raises that where a claim for unjust enrichment is duplicative of a breach of contract claim, it is precluded. *See* ECF No. 55 at 10. More broadly, "[i]t is a general rule under New York law that no claim for unjust enrichment lies where the subject matter of the claim is covered by a written contract." *Hurowitz*, 444 F. Supp. 2d at 249. However, plaintiffs are permitted to plead unjust enrichment in the alternative where the contract governing the transaction and its applicability are in dispute. *Id.*; *see also Nachman v. Tesla, Inc.*, No. 22-CV-5976 (RPK) (ST), 2023 WL 6385772, at *6 (E.D.N.Y. Sept. 30, 2023) ("A plaintiff may plead unjust enrichment in the alternative when a jury could find unjust enrichment on one view of the evidence, or a different theory of recovery on a different view of the facts—such as when a jury might find that a plaintiff was entitled to recover on a contract or, alternatively, that no contract existed but that defendant's

10

retention of funds would be unjust."), *aff'd*, No. 24-2362, 2025 WL 1201996 (2d Cir. Apr. 25, 2025).

Here, Storlie argues that it is not bound to the Credit Agreement and consequently is not liable for any breach by DSA. *See supra* Section II. "Because there is a dispute as to [Storlie]'s obligations under the contract . . . [OEC]'s unjust enrichment claim survives, although solely as an alternative to the breach of contract claim." *Bridgeway Corp. v. Citibank, N.A.*, 132 F. Supp. 2d 297, 305 (S.D.N.Y. 2001); *see also Cal Distrib., Inc. v. Cadbury Schweppes Americas Beverages, Inc.*, No. 06 CIV.0496 RMB JCF, 2007 WL 54534, at *10 (S.D.N.Y. Jan. 5, 2007) ("Because the parties disagree as to whether the . . . Agreements are binding on the Defendants, the Court cannot conclude that the unjust enrichment cause of action is precluded."); *see also Hurowitz*, 444 F. Supp. 2d at 249 (stating the same); *Topever Corp. v. ENE Grp. LLC*, No. 12 CV 869 HB, 2013 WL 822378, at *5 (S.D.N.Y. Mar. 6, 2013) (same). Accordingly, Storlie's motion is denied.

## CONCLUSION

For the reasons set forth above, Defendant Storlie's motion to dismiss is hereby **DENIED**. This case will be referred to Magistrate Judge Valerie Figueredo for general pre-trial matters. The Clerk of Court is respectfully directed to terminate ECF No. 50.

**SO ORDERED.**

Dated:  June 6, 2025
        New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**

11